EDWARDS and another vs. REMINGTON, imp.

*January 12 — March 18, 1884.*

*Partnership — Settlement — Reversal of judgment.*

Findings of the trial court as to the settlement of partnership matters and the apportionment of assets and indebtedness are *held* not to be against a clear preponderance of the evidence so as to justify a reversal of the judgment.

APPEAL from the Circuit Court for *Wood* County.

The pleadings, and the view taken by this court of the evidence, will sufficiently appear from the opinion. The circuit court found the facts substantially as stated in the com-

plaint.   As conclusions of law it held, among other things, that each member of the firm of Remington, Powers & Co. who has overpaid his share of the indebtedness of said firm, is entitled to recover such excess with interest; that each member of said firm who failed to pay his share of said indebtedness is liable for the amount which he thus failed to pay, with interest from the time it was paid by the other members; that the amounts paid by the members of said firm on the indebtedness thereof in excess of their shares, with interest, are a lien upon the stock of the members owing such deficiencies; and that a receiver be appointed to take possession of the stock in the hands of *Scott* and dispose of and distribute the same according to the rights of the respective parties.   From the judgment entered accordingly the defendant *Remington* appealed.

For the appellant there were briefs by *H. W. Remington*, in person, and *G. W. Cate*, of counsel, and oral argument by *Mr. Remington*.

For the respondent there were briefs by *Webb & Cochran* and *Geo. R. Gardner*, and oral argument by *Mr. Gardner*.

The following opinion was filed January 29, 1884:

TAYLOR, J.   This action was brought by *John Edwards* and *Thomas B. Scott*, partners under the firm name of J. Edwards & Co., for a final settlement and closing up of the business of the firm of Remington, Powers & Co., of which the plantiff *John Edwards, Henry W. Remington*, Levi P. Powers, John Rablin, and Reuben C. Lyon, are alleged to have been the only members.   *Thomas B. Scott* had a joint interest with *Edwards* in said partnership, but his name did not appear as a member of the firm.

The complaint alleges that the sole business of said firm was to construct the Wisconsin Valley Railroad from Tomah to Centralia, in Wisconsin; and that the firm completed the construction of said road on the 1st day of July, 1873; and

that previous to the 21st of July, 1873, the firm sold all its interest in said road to James F. Joy, of Detroit, Michigan, for $65,000 in money and $77,000 in the stock of said railroad company. It then alleges that on the 21st day of July, 1873, the said firm had a final settlement between all the members thereof, concerning all matters connected with said partnership so far as the same could then be ascertained, and that upon such settlement it was found that the several members of said firm and the plaintiff *Scott* had paid into said partnership up to that date the following sums, to wit: John Rablin, $15,216.17; *John Edwards*, $13,164.75; Reuben C. Lyon, $995.75; *H. W. Remington*, $2,015.39; Levi P. Powers, $4,820.25; and that *T. B. Scott* had advanced to said firm the sum of $4,086.11, for which he was to receive an equal amount of the stock of said Wisconsin Valley Railroad Company to be received of said Joy. That the indebtedness of said firm at that date, as near as could be then ascertained, was $20,000; and that by mutual agreement by the several members of said firm, as well as by the firm of J. Edwards & Co., the said indebtedness was apportioned to and assumed by the several members of said firm as follows: John Rablin, $5,250; R. C. Lyon, $1,000; *H. W. Remington*, $4,500; Levi P. Powers, $3,000; and the said firm of J. Edwards & Co., agreed to pay $6,250; and that each of the members of the said firm of Remington, Powers & Co. agreed with each and all the other members to pay the amount so apportioned and assumed, in consideration of the promises of all the other members to pay the amounts so apportioned to them respectively.

The complaint then alleges that it was agreed by the members of said firm, at the same time, that the $77,000 of stock which was to be received from said Joy was to be divided among them in certain proportions, after *Scott* had received thereof the sum of $4,100 and *Remington* the sum of $5,000, and the sum of $20,000 had been set apart to

Graves & Rhomburg, and after the said parties had paid the several portions of the said debts assumed to be paid by them, and thereupon the firm of Remington, Powers & Co. was dissolved by the mutual consent of all the parties thereto. The complaint further alleges that the debts of the firm were in fact more than $20,000, viz., $22,417.97, and that since the said settlement made between the members of said firm, the several members thereof have paid the following sums in satisfaction of said indebtedness, viz.: John Rablin, $5,020.28; R. C. Lyon, $1,550.57; *H. W. Remington*, $808.94; L. P. Powers, $1,091.97; J. Edwards & Co., $13,945.61; that the plaintiffs have paid $7,695 in excess of the amount apportioned to and agreed to be paid by them; that *H. W. Remington* has failed to pay $3,961.06 of the amount apportioned to and agreed to be paid by him; that Powers has failed to pay $1,908.03 and John Rablin $229.12 of the several amounts apportioned to them respectively, and that they have paid no part of the $2,417.97, the excess of the debts over the said $20,000 upon which said apportionment was made.

The complaint then alleges that the stock agreed to be paid to said firm by said Joy has been issued, and is held by said *Scott* in trust for said firm, and constitutes the only assets of said firm; that the whole indebtedness of said firm has been paid; that no settlement has been made since the dissolution of said firm, between the plaintiffs and the said defendants, and that the defendants refuse to settle with plaintiffs or to contribute their share towards the payment of said indebtedness, or to reimburse the plaintiffs for the excess paid by them. The complaint concludes with the following prayer for relief: "That an account may be taken of all payments made by the plaintiffs and defendants on account of the indebtedness of said late firm since the settlement and dissolution, and that the defendants may be adjudged to pay to the plaintiffs the excess so paid by plaint-

iffs over and above their just and equitable proportion, and that the amount found due to the plaintiffs be declared a lien upon defendants' said stock, and that said plaintiffs may have such other and further relief as may be just."

None of the defendants answered the complaint except *Henry W. Remington*, and he, after admitting the partnership of the plaintiffs and the partnership of Remington, Powers & Co., with a qualification that one Seth Reeves was also a member of said firm of Remington, Powers & Co., denies specifically every other material allegation in the plaintiffs' complaint. The answer of *Remington* asks no affirmative relief.

The plaintiffs' right to relief in this action depended entirely upon the truth of the allegation in the complaint, that, on the 21st of July, 1873, the members of the firm of Remington, Powers & Co. had a final settlement between themselves concerning all matters connected with said partnership so far as the same could then be ascertained, and that, upon such settlement, it was found that the several members of said firm and the plaintiff *Scott* had paid into said partnership, up to that date, the several sums stated in said complaint. This alleged settlement *Remington* denies, and alleges that he had paid into said firm at that date a much larger sum than is alleged in said complaint, and for which he ought to have credit as against the other members of said firm. The pleadings on the part of *Remington* do not go upon the theory that there was a settlement, nor does he admit any settlement and seek to avoid the same by showing that he assented to it without full knowledge of the facts, or that he assented to it under a mistake of the facts, or that he was induced to assent to it through the fraud or misrepresentations of any of the other members of the firm. He places himself squarely upon the issue that no settlement was ever made, so far as he was concerned, at the time alleged in the complaint, or at any other time. If, therefore, *Remington*

had succeeded upon this issue, it would have probably been the end of the plaintiffs' action, and the court should have rendered a judgment dismissing their complaint, as neither of the parties to the action had by their pleadings asked for any accounting between the partners as to the general affairs of the partnership.   On the other hand, if this issue be decided in favor of the plaintiffs, there is no ground for setting aside the judgment rendered in the action, as there is no complaint made by *Remington* that he has not been allowed for all payments made by him on behalf of the firm since the alleged settlement on July 21, 1873.   Nor is their any cause for complaint that the railroad stock received by *Scott* for the firm has not been by the court justly apportioned to the respective partners upon the basis of such settlement, except that the appellant disputes the right of *Scott* to appropriate the sum of $4,100 of said stock on account of the money he claims to have advanced to said firm of Remington, Powers & Co.   The amount of the indebtedness of the firm when it is alleged said settlement was made, is satisfactorily established, and the amount which each of the partners has paid upon such indebtedness since the date of the alleged settlement is also satisfactorily established, and its apportionment amongst the partners upon the theory of a final settlement on July 21, 1873, was undoubtedly justly made upon the same basis of apportionment which they made at that time of the supposed indebtedness of $20,000. The evidence clearly shows that on July 21, 1873, the members of the firm intended to provide for the payment of all its debts and to apportion the debts for payment among the several members as set out in the written agreement signed by all of them on that day.   They supposed the debts were $20,000, and the apportionment among the members was based upon that sum.   If it had turned out that the debts were less than $20,000 the ratio of the apportionment of the less sum would certainly be the same as the ratio of the ap-

Edwards and another vs. Remington, imp.

portionment made upon the $20,000, and it seems to us clear that the same ratio of apportionment should apply to the excess of debt over the $20,000, in the absence of any proofs that it ought to be apportioned differently.

Upon the trial of this action in the circuit court, the court found upon the issue of settlement or no settlement, in favor of the plaintiffs, and this finding, and all the others which naturally follow from and are based upon it, are attacked by the learned counsel for the appellant, as well as by the appellant himself, as being entirely unsupported by the evidence, and this court is asked to reverse the judgment rendered in the case for that cause. This presents a pure question of fact for the consideration of this court; and, in view of the large interests claimed to be involved on the part of the appellant by the decision of that question, we have not contented ourselves with reading the printed case and the statements of the facts made by the parties in their briefs, but have carefully read all the written bill of exceptions found in the record, and, without giving any statement of the evidence given by the respective parties upon that issue, we are of the opinion that the finding of the circuit court is sustained by the evidence. Certainly there is no such preponderance of evidence against the finding as would justify this court in reversing it under the rule established by numerous decisions of this court. We are led to this conclusion, not so much from the mere fact that certain witnesses, who were present at the meeting of the members of the firm on July 21, 1873, declare that there was a settlement of the defendant *Remington's* claims against the firm, as from other facts which have a direct bearing upon that question, some of which are here indicated. *First.* It is certain that on that day it was agreed that each of the several members should pay a certain portion of the outstanding debts of the firm. This fact is evidenced by the writing signed by the parties at the time. It is evident also from

the whole evidence that in order to get at what would be a just apportionment of the outstanding debts among the members of the firm, they did undertake to ascertain what each member had previously paid out for the benefit of the firm. That fact would certainly have a very direct bearing upon the question of the apportionment of the outstanding debts, even though such apportionment were not made upon the basis of the strict legal liability of the parties as between themselves, but upon their supposed ability to pay. *Second.* At that time the active work of the firm had been finished; there was nothing for it to do in the future except to pay its debts and collect what was due to it; it would be natural, therefore, that they should seek to adjust their affairs at that time. *Third.* At that time all the assets of the firm were disposed of by a sale to *Remington,* except the railroad stock, which was to be received from Joy, and which it was agreed in writing should be thereafter distributed among the members in proportion to what each had theretofore paid, and should thereafter pay, on behalf of the firm. *Fourth.* The time spent at the time of the alleged settlement would seem to have been ample to accomplish it. *Fifth.* The fact that all the other members of the firm have acquiesced in the alleged settlement and apportionment of the debts made at the time tends to show that such settlement was intended, at least, to include a settlement with *Remington,* for the reason that if there was no settlement with him the final apportionment of the debts and the liability of the respective parties, as among themselves, would be unsettled and undetermined by anything which occurred at that time. These considerations, connected with the fact that several of the persons who were present at the time of the alleged settlement testify positively that he presented his claims, that they were considered by the other members, and that the amount he should be credited with was agreed upon, and that *Remington* assented thereto, fully sustain

the finding of the court upon the point at issue, and it is impossible to say that the clear preponderance of the evidence is against such finding. We would not be justified in setting aside such finding for want of sufficient evidence to sustain it.

The only other finding affecting the judgment in this action against the appellant is the finding upon the allowance of $4,100 of the railroad stock to the plaintiff *Scott* before making a division of the same among the members of the firm. This also presents a pure question of fact. It was fairly presented by the evidence, and the finding of the circuit court is sustained by evidence appearing in the bill of exceptions. We cannot say that the clear preponderance of the evidence is against that finding. Upon the theory of the plaintiffs' complaint, that a full settlement of the claims of the several members of the firm against the firm was made July 21, 1873, and that in that settlement the $4,100 of the stock was set apart to *Scott* for money advanced by him, there does not appear to be any objection to the other findings of fact made in the case, and the conclusions of law are sustained by these findings, and the judgment entered in the case was the right judgment to enter therein.

It was urged by the learned counsel for the respondents, on the argument in this court, that there were no sufficient exceptions to the findings of fact to justify this court in reviewing the same; and it was also urged by him that the judgment in a former action by the plaintiffs against *Remington* to recover upon the contract by which the $20,000 of debts were apportioned to the several members of the firm, and by which each member agreed with the others to pay a fixed and definite amount of said debts, was conclusive evidence against the appellant in this action upon the question of settlement as well as upon the apportionment of the debts. We have not felt called upon to pass upon either

of these questions, as we think the findings are in fact supported by the evidence produced in this action without any aid from the judgment in the former action. We have, however, examined the record in the former action, and are of the opinion that the question of a final settlement and adjustment of the claims of the several partners against the firm up to July 21, 1873, was not necessarily adjudicated in that action, and was not passed upon by this court in its decision of the appeal in that case. See *Edwards v. Remington,* 51 Wis., 336; as to the questions involved in that case, see opinion, p. 342. It is clear that this court did not pass upon the main question presented on the trial of this action, nor did we consider that question necessarily involved in that case. The adjudication in that case, that there had been an apportionment of the $20,000 of the debts of the firm among the several members thereof, and that they had severally agreed to pay the sums apportioned to them respectively, would, perhaps, be conclusive upon the appellant in this case upon that question. We do not deem it necessary to invoke the aid of that judgment to sustain the finding of the court in this case upon that fact, as the other evidence in the record fully sustains the finding upon that point. The fact that in the former case *Remington* did not claim, as he did upon the trial of this action, that it was agreed that any other claims he might have against the company which he did not produce at the time of the alleged settlement should, when produced, be allowed to him in payment and satisfaction in part or in whole of the said sum of $4,500 which he agreed to pay upon the debts of the company, has a tendency to weaken the force of that evidence on the trial of the case at bar, and might properly have been considered by the circuit court in giving the proper weight to that testimony in this case. If such had been the agreement, and he could have satisfied the jury of that fact on the former trial, and of the further fact that he was entitled to but a small part of the

credits he now claims in this action, he would have had a verdict in his favor on that trial.

So far as we are all able to judge from the record in the case, the questions litigated seem to have been fairly presented to the court, and the decision of the circuit judge is fairly sustained by the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *H. W. Remington,* in person, and *G. W. Cate* and *Lewis & Harding,* of counsel, and a brief for the respondents by *Webb & Cochran* and *Geo. R. Gardner.*

The motion was denied March 18, 1884.